All right, the next case on this morning's docket is Sheldt v. Litchfield National Bank. We're going to take you over to the telegraph, Wunderlich, for the capital lead. Take your seats and get ready. When you're ready, we'll move you in the office. If we could court, counsel. My name is Rick Peticchio, and I represent the plaintiff, Helen Matthews Sheldt. This appeal, Your Honor, concerns the trial court's dismissal of the plaintiff's Second Amendment complaint, pursuant to a 2-6-15 motion finding that the complaint did not contain allegations of fact to state a claim for relief. Two general principles guide in this case. One, that a complaint should not be dismissed, should not be dismissed, unless it's clear there's no set of facts which can be proven that would entitle the parties to relief. And secondarily, the trial court must view all well-planned facts and reasonable inferences therefrom in the light most favorable to the non-moving parties, in which case, the plaintiff. And these two principles, Your Honor, I don't think they're really in serious dispute by any means. Those are some well-established legal principles. Let's look at the facts in this case. The plaintiff bases his claim on two theories, really one, and punitive damage for the second one. But the theory of relief is that there was a fraudulent misrepresentation by concealment of materials of fact to the plaintiff by the bank. The defendant bank is Litchfield National Bank. The facts were established approximately 69 days before May 2008 when there was a refinancing. The plaintiff had made inquiry of this bank concerning an alleged indebtedness on his mother's home that resulted from a promissory note mortgage way back in October of 1986. The plaintiff's father died in December of 2007, and that's when the plaintiff got involved in trying to look into this mortgage. Under the terms of this promissory note mortgage, there was going to be five years from 86 when it was signed to 91 where there were no payments because it was involved in some other notes. And then there would be payments over a 60-month period, so it would be paid off in 96. The facts established that starting in 96, there were some sporadic payments. But as of 2004, there hadn't been payments for over seven years. The note was due with no payments for seven years. At that time, the complaint alleged, as a matter of fact, which is accepted as true, that a bank's representative went to another and signed a note which was the plaintiff's brother because the note was signed by the plaintiff's mother, father, brother, and sister-in-law. And the bank's representative said, why don't you just make $100 a month in payments? And that's in the record that the bank made the request? Well, it's in the record because we alleged that. Yes, I mean, we never had a false 260 in motion. No affidavit or anything? No, sir. Well, the complaint was filed as a verified complaint, but we alleged that the bank's representative went to the plaintiff's brother and said, hey, you guys aren't paying on this note. You know, we got mom, dad, and wife, and we got mom, dad's house as a mortgage. Why don't you just pay $100 a month? Now, by the way, $100 a month at that time would not have paid the accruing mortgage. It would be negative amortization of a debt, which, as we allege in our complaint, is against a specific statute in the state of Illinois that a bank can't be involved in a financing arrangement where there's negative amortization. The statute is the High Risk Loan Act, 815 ILCS, Section 13, and that's it, where the bank can't have negative – can't project a negative financing where if you follow what they're asking you to do to make the payments, you'd never pay it off. I mean, you'd owe more at the end of the issue than you would last year. You'd never pay it off. It's also called loan-flipping, I think, in the legal term. And all these matters are in allegations in our brief. Is there anything that supports a claim that the bank said, make this $100 payment. We won't foreclose. Maybe you can work this out in future years. No, we did not allege that. And it's not a fact that we allege that the bank said anything other than suggest that you make $100 payments. And he did make some sporadic payments, as we allege. Now – You're not contending the bank had a duty to say, if you pay this $100, then the statute of limitations is ineffective? No, no. We don't allege that. As a matter of fact, what we allege is that in 2008, when the plaintiff goes to the bank and starts talking about this loan, he's told, well, here's the balance due. What he's not told – and this is the concealment of material effect – is that had it not been for these sporadic payments that your brother made for $100 that wasn't going to pay the loan off, wasn't going to do anything, the statute of limitations would have run. That's not a fact. Well – That's a fair to disclose the legal effect of a set of facts, right? No, I said what that is – I mean, you know, is there any claim that they didn't disclose that the brother made the sporadic payments? I don't think it's – no, I think that they know he made sporadic payments, so we allege that he did, so that was disclosed. So your client knew that the brother made the sporadic payments. What he didn't know was the legal effect of that. What? That may be, but the bank is the one that the reasonable instance – I don't – Okay, but where is the bank's duty to advise your client of the legal effect of the set of facts leading up to this loan? I don't think they have that duty. Okay. Let me follow with you. Okay. This is where the gut's the case. Yes. The bank, when the plaintiff went to talk to him about the loan, told him this is how much is due. It is a fact that had he not made these payments, the seven years would have run – excuse me, the ten-year statute of limitations would have run with seven years that they made payments. So it's a fact, as alleged, that had he not made these payments, the statute of limitations would have said these are an uncollectible debt. Now, it's at that point that we allege the only reason he did this, the only reason the bank did this, was to extend the statute of limitations. And that's the fraudulent action, is that they extended the statute of limitations and they had to tell him that. By not telling him that, they concealed the material fact. It is a material fact. So they should have told him we defrauded your brother by tricking him into making these payments so that the statute of limitations wouldn't run against him. And it would have run had we not done that. And you should take that into consideration in deciding to take on this loan as a new loan. And another way to say that is what they should have told him was this loan is not collectible. We can't collect this loan. Because they were involved in an activity that is clearly not equal. They were not allowed to participate in a loan arrangement where you couldn't advertise the loan. Now, the conclusion, allegation of the bank and accepted by the trial court was, well, that's your conclusion as to why they did it. It's a reasonable inference as to why they did it. And particularly when taken in the light most favorable to the plaintiff. They did it. They went to their brother and said pay us $100 loan. They could have said pay us all of it now. Sure. Otherwise, we're going to sue you. We're going to throw you into bankruptcy. We're going to do whatever. Instead, they said pay us $100. Pay us $100. Kind of hard to see how that was of a great advantage to them. Well, I don't know how it's an advantage. What it surely didn't have as an advantage. The advantage to them is they owned it by giving a payment. Oops, 10 more years. 10 more years. 10 more years. It keeps going down the line. They knew that that's a reasonable inference. Let's carry this all the way to the end, Mark. This case is thrown out on 2-6-15. The defendants say in order to have a claim, you have to state a recognizable cause of action. Fraud is a concealment of a material fact. It's a recognized cause of action. You have to allege facts and accept the truth. State that. And I'll go over the elements. But venture with me that in the bank's records, which we don't have. We're going out on 6-15. In the bank's records is a note from the bank president, Mr. Fleming, that did the discussion with the brother as a list. Okay, got the brother to pay $100. It was good for another 10 years. That's in the record? No, it's not. I'm saying venture with me that it could be in the record, Your Honor. It could be in the record. And if it's in the record, if it's in those notes, we don't get to bring a claim that clearly we should get to bring. This is in 2-6-15. Now, you want to come back in the summary judgment after you review this and say, look, all the facts show, the reason you did this, the brother actually came in and the brother says, and then we told the brother, look, raise the $100 for a couple of months or something. We don't know this. We know what we allege. And when accepted as true means that we've got a cause of action and we should be allowed to bring it because interpreted in the light most favorable to the plan, the reasonable instance of, why don't you just pay $100 on this loan, was all you're going to get out of that bank is extending the statute of limitations. And that's what happened. And so now the guy dies at a time when otherwise it would have been gone. And the other brother walks in and says, I don't want my mom's house so closed down. What does she owe? At that point. They did not foreclose either. They did not foreclose. No point that they foreclosed, Your Honor. But Your Honor, at that point now, the defendant made a big argument to suggest, well, look, banks has been ruled on many times. Banks do not have fiduciary duty to their customers. Let me agree with you. Just in a general position when you're a customer of a bank, it doesn't mean you have fiduciary duty. When I asked him, how much money do I have to pay off on this loan? They tell him, they should have told him, actually, you can't. You can't do that. They didn't tell him the material. And what you just said is based only upon your inference that you draw, that the reason that they got the $100 payment was to avoid the statute of limitations, because what I'm hearing you say is you have no evidence that that is why. No evidence. I mean, your good faith basis for alleging that is hanging only on the thread of an inference that you want to draw. Well, you know, anyway, you're making it literal. But I'm telling you it's a reasonable inference. Now, if I get to the trial court and the trial court says, you know, there could be lots of reasons why. Maybe they wanted to collect some of the money on the debt. Tell us what they are. Tell us what they are. It's a question of fact. Remember, it's a reasonable inference. Take it to the life of the most favorable. How could you take that inference? How could you take that fact that they asked you to make $100 payments, which under two statutes of the state of Illinois says you can't even do that. But how could you take that fact in the most reasonable light favorable to claim it? That's what the law says. That's what the principles of law is. And when you take that inference, most able to claim it. The answer is they did it just to extend the statute of limitations. Once you get there, then they did have a duty to tell us the truth. I will go over all the, the, the statute, excuse me, all of the elements of fraudulent concealment. But the guts of it is what we've been talking about. I don't like to just list off elements. I mean, clearly, he would not have done, he would have done differently had he been told that he can't collect the debt and his debt concerns, his injury concerns this. So it all gets down to this first one. Was this a fraudulent concealment of material fact? Well, the fact that the debt's not collectible, other than what we did, is material. I mean, how could it be more material? You're talking about the debt and something to make it not collectible. It makes it material. So was it fraudulent concealment? And they say, no, we had no duty to tell them that we did this only to extend the statute of limitations. Remember, that's not the issue, whether they had a duty. First, the issue first is, is it a reasonable inference? That's why they did it. And once it is, then that duty falls in line, not because they have a fiduciary duty, but because we're talking about, do I have to pay off my mom's debt to get the mortgage off her house? Well, no, you don't. And here's the reason why. We actually, the statute of limitations would run in this case because of the reasonable inference. Now, could we lose on a factual basis in a trial court? Could the jury say, the judge say? It's really not the statute of limitations that's run. It's you might have an argument that the statute of limitations has run because you can come in and argue that the only reason we had to make these payments is to extend it. Yes, sir. That's what it really is. But for these payments, the statute of limitations would have run. It would be a different case if your client came in and assumed the debt and clearly the statute of limitations had run. Well, I think it would have. It would be a different. Well, but for. Now, you have an argument that it ran. Remember, this is just, and that argument has been raised in this court in the case of Justice Welch in the Binion case. I cite this, Your Honor, page 24 of my brief. It said, whether a reasonable inference is determined by the reviewing facts is not the issue. It is to be looked at most favorably to the plaintiff. We don't have to prove in our complaint that the statute of limitations has run. We just have to raise the issue. We raise the issue that the statute of limitations would run because there's no other reason for them to do something that by law they were not allowed to do. We cite, Your Honor, also the case from this court, a Fifth District decision in 1995, Justice Rarick, in the case of Bettis v. Crenshaw. That's page 19 of our brief. In that case, a clothesline poll fell on the plaintiff. The facts established that the defendant said, we're going to take care of all the outside area here, which included the clothesline poll. That's our duty. The trial court kicked them out because the plaintiff couldn't prove negligence. This court said, no, no, no. Once you establish that the defendant was taking care of the clothesline poll, there can be a reasonable inference, when taken in the light most favorable to the plaintiff, that it resulted from negligence. And as a result of that, the trial court was wrong from dismissing the case. Let's let this one go forward and find out why they did what they did and who did what and why we're here today. In our case, I'm not saying there's that note in the file, but the fact that there could be that note in the file, because that's what the reasonable inference suggests with the court of Donald Trump, that's why they did it, means we've stated all the necessary elements for a fraudulent concealed material fact in our complaint when this reasonable inference is taken in the light most favorable to the plaintiff. Once taken in the light most favorable to the plaintiff, we need to get to the facts. This court, you know, the guiding principle I cited to you, honestly, the very beginning was, you're not supposed to dismiss the case unless there's no way, there's no facts, nothing could ever sustain this claim. Well, if they had that note in the file that says that's why we did it, hey, boys, don't worry about this one, you know, note to the board of directors, don't worry about this one, we've got to stand for another 10 years. There's a set of facts that could sustain this claim. As such, the trial court should not have dismissed it at this level. You should be allowed to go find those facts, and we ask your Honor to reverse it. Thank you. Thank you, Mr. Peticchio. You have an opportunity for rebuttal. Ms. Wunderlich. Rebuttal. May it please the court. My name is Sandra Wunderlich, and I represent Litchfield Bank. I think the court has zeroed in on the issue here. Let's just for the moment assume that it is a reasonable inference that the bank asked for these payments from his brother to extend the statute of limitations. I looked, could not find a single case where anybody fraudulently extended the statute of limitations. The bank had three choices. It could have foreclosed, it could have refinanced the note, or it could have asked somebody who owed on the note to make the payments. The bank asked somebody to make the payments. And I don't think you can draw an improper inference from that, but let's just assume for the moment that you could, that you could say, yes, the bank's sole motive was to extend the statute of limitations. The bank had a right to extend the statute of limitations. They did absolutely nothing wrong. It still does not establish that a cause of action on behalf of the plaintiff. He has to show that the bank concealed a material fact. His allegation is that the bank concealed the fact that if his brother had not made payments, the statute of limitations would have run. Two problems with that. First of all, it's a legal conclusion. The bank cannot have a duty to tell somebody when the statute of limitations runs. Every time somebody makes a payment on their mortgage, apparently the bank has to send a note out, oh, by the way, we've extended your statute of limitations. That's just silliness. That's a legal conclusion. He can get that from a lawyer.  The other problem with it, it's an assumption. The bank's supposed to tell him what would have happened had his brother not made the payments. Well, what would have happened, could have happened, would have been a foreclosure or a refinance. So it's not a material fact. It can't be a material fact. He has not stated a cause of action. The trial court was correct. The issue here is whether he has sufficiently pled a cause of action. He can't. There's no amount of discovery he could do to establish that this is a cause of action here because he can't meet that first element. And you have no dispute that it's a question of fact whether they did this to either extend the statute or just be nice to the bank and not kick him out. Isn't that a question of fact, why they did it? It would be a question of fact as to why they did it. The problem is that has nothing to do with whether he can establish his cause of action. The bank's motive for getting the payments from the brother is completely irrelevant to whether the bank made some sort of a misrepresentation to the plaintiff's brother. Perhaps if the plaintiff's brother wanted to file a lawsuit, we might have a different case here. He wants to focus on what the bank fraudulently obtained these payments from his brother, which I'm not clear on since the brother was obligated on the note. But if his brother wanted to bring a lawsuit, perhaps we could look at that a little bit closer. But the plaintiff certainly doesn't have standing to claim that his brother was fraudulently induced into making these payments. If we infer that the bank knew that the statute of limitations was going to run and that's why they got him to make the payments, shouldn't we infer that if he hadn't made the payments, they would have filed suit and not let the statute of limitations run? Yes. If they knew the statute of limitations was running, why would they just let it run if he didn't make the payments? Does that make sense to you? Absolutely. That's absolutely a proper inference. Like I said, they had three choices. They could have foreclosed, they could have refinanced, or they could have patiently accepted payments. This note originated in 1986. The bank was more than patient. No good deed goes unpunished. They tried and they tried to work with these people. To suggest that they did anything wrong here, it's just insane. But nonetheless, he can't meet his cause of action. No matter how many reasonable inferences you give him, he can't establish a cause of action here. The reason he hasn't alleged a cause of action is he hasn't alleged concealment of a material fact. Correct. What he has alleged is what the legal analysis of a given set of facts are. Right. And that's why the trial judge dismissed it. Exactly. Three times. The trial court said, you know, that's a legal conclusion. You were expecting the bank to tell you a legal effect of your brother making these payments. And that is not actionable. That's not a material fact. I thought he dismissed it twice and gave him a third opportunity and then he didn't. The first time, plaintiff voluntarily. We file our motion to dismiss on this basis. Plaintiff voluntarily said, I will amend. So he amended, trial court dismissed it, and then dismissed it again, and he amended, and then the court. We were on the second amended complaint. That's what's in front of us, the second amended complaint. I think the facts of this case are particularly important. Like you said, you know, the claim is somehow that we did something to his brother. And plaintiff doesn't have standing to bring any kind of a claim. He talks about this, the Home Loan Act, this High Risk Home Loan Act. It doesn't even apply here. Is that the Illinois Fairness and Lending Act? There's two. There's the High Risk Home Loan Act, and then there's the Illinois Fairness and Lending Act that he raises. The High Risk Home Loan Act, first of all, has to be a home loan, not a business loan. This was a business loan for his brother. This was not a home loan to purchase a primary residence. There's an exception in the statute for when the bank is a renegotiation based upon forbearance by the bank. If the bank's not going to foreclose, they'll accept periodic smaller payments. This statute doesn't apply. This is a negative amortization. But more importantly, if there was any alleged violation of the statute, it belongs to his brother. It does not belong to him. He doesn't get to raise that. And this Illinois Fairness and Lending Act, the loan flipping, specifically its terms apply to refinancing. We didn't refinance here. We just asked his brother to pay on what he already owed. Again, it's related to the principal residence. This was not his brother's principal residence that this mortgage was on. And, you know, it's saying that the statute says something about the bank can't receive fees when there's no evidence that it's a benefit to the homeowner. There's no evidence the bank received fees. There was no refinancing. And finally, it's his brother's claim. Once again, if there's some violation of an Illinois Fairness and Lending Act, it would be his brother's, not his. His brother is not a party to this lawsuit. He has made no objection whatsoever to the handling of the loan by Litchfield Bank. I would say these are just distractions. He doesn't understand that this is a legal conclusion that he's trying to force the bank to give legal advice as to when the statute of limitations would run. That is not an actual cause of action. There's not a single case in Illinois that would suggest that that's a proper cause of action. Plaintiff also talks about a duty. You know, he has to show that we had a duty to tell him this information. Well, clearly there's no duty for us to give him legal advice. There's no question about that. But there's also no duty to tell him, you know, why we reached out to his brother and asked him to make payments or, you know, whatever it is. I'm not even entirely clear what he's trying to say we should have said to him. The bottom line is the brother made the payments, the statute of limitations did not run, and we had every right this loan was fully collectible. When Mr. Schultz came in and said, I want to get this mortgage off my mother's property, what is the value of that mortgage? And he paid it off. That was his choice. We didn't make any representations that were not accurate. We told him how much he owed. In conclusion, I would say the trial court properly dismissed the second amended complaint for failure to state a cause of action. He cannot meet the standard. He cannot pursue a cause of action here. I would ask that the court affirm this decision and find it in favor of what you feel today. Thank you, Ms. Winters. Mr. Peticchio, can you respond to the argument about lack of standing and the inapplicability of the Illinois Fairness and Lending Act, please? Number one, there's never been an argument raised on the inapplicability of those two acts. I think they are applicable. But they deal with refinance. They are. What the act says, my interpretation is, they're not allowed to participate in financing arrangements, and this is what tied into that standing is they argue in their brief that, look, the bank just accepted these payments. No. We allege this was the bank's doing. The bank was setting up this refinancing, not refinancing, set up this financing arrangement of $100, and that that arrangement violated these two acts. Now, we're not alleging that for the purpose of establishing a claim of the brother. We're alleging that to show you that it is a reasonable inference that the only reason they did this was to extend the statute of limitations. And once you get there, then all the cards fall on our side. With Justice Stewart, I explore the possibility that there could be a note in the file that says, yeah, we got to pay the $100. It's been extended. Now, I'm not saying it's there, but what I'm saying is the guiding principle of this court should be if there are no facts that any way that could ever be found out once you get into this case that would sustain this cause of action, then you must dismiss. But there is a set of facts. I just gave you one. There may be lots. There may not be. But we need to look at it in a factual issue in the trial court as opposed to having the trial court say, no, no, you're raising legal conclusions. Because if it is a reasonable inference that it's a question of fact as to the only reason that they took these $100 payments, at their suggestion, was to extend the statute of limitations, then there is something they need to be telling Mr. Schell when he goes and tries to refinance it. I ask this because that's not really collectible because we know we worked on it right here. The only reason we did that was to extend the statute of limitations. Oh, just a minute. What if there is a note in there that says we got a payment. The statute of limitations is now extended. Couldn't that also mean now we don't have to file suit by a certain other date? We can give them more time to pay on this. Why is there something sinister about them accepting these partial payments? Because they didn't accept them. That's what they want to tell you. They asked for them. They were owed the money. What's wrong with somebody being owed money asking for a payment? Because the bank is not supposed to participate in financing arrangements where they're not going to amortize the debt. So the bank can't ask for less than a full payment? The bank can't participate in financing arrangements that are less than negative financing. So take this payment. And the reason to do that is to protect the public. The bank says, hey, why don't you just give us $100? Give it to us every month. So he pays it for 40 years. He said, where am I going? I'm probably a little further behind than you were 40 years ago. But, yes, yes, and that would be the fact. And that's why the statute is there. The bank can't participate in those financing arrangements where the customer is not sophisticated and realizes the bank's suggestion isn't even going to allow them ever, ever, ever, ever, ever to pay off. Your Honor, the bank is required to know the banking regulations. They knew that this was not proper. They're the ones that requested it. And it's very important. It was not just accepting a loan. It was requesting, accepting a payment. It was requesting a payment. It had anything to do with it. If they were the ones that, if the brothers just came in and got $25 and said, here, apply this on the loan. I just want this in a lottery ticket. That were the facts. Then they would say the statute of limitations. We'd have no objection. But the, when taken into light, most reasonably favorable to the plaintiff. The only reason the bank did this was to extend the statute of limitations. When you get there, they needed to have told him that when he asked. They concealed the material facts. It is a material fact. And if the debt wasn't collectible, that's fairly material. We're asking, Your Honor, to reverse as the argument cited here and as in our brief. Thank you. Any other questions? Thank you both for your briefs and arguments. We'll take a matter under advisement.